1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                       * * *

9   RANDOLPH BLUM,                          | Case No. 2:12-cv-00248-MMD-GWF

10                          Plaintiff,       |
                                             |                ORDER
11          v.                               |
                                             | (Plaintiff's Motion for Default Judgment –
12  SPAHA CAPITAL MANAGEMENT, et al.,        |              Dkt. no. 18)

13                          Defendants.

14

15  **I.      SUMMARY**

16          Before the Court is Plaintiff Randolph Blum's Motion for Default Judgment.  (Dkt.

17  no. 18.)  Defendants John Van Clief and Spaha Capital Management, LLC ("Spaha")

18  (collectively "Defendants") have not responded.

19  **II.     BACKGROUND**

20          Defendant Van Clief is the Managing Director and alter ego of Defendant Spaha.

21  In February 2006, Defendants sold Blum 246,000 shares of common stock and a

22  warrant of 123,000 of common stock in Spaha and/or Action Skate Parks, one of

23  Spaha's various trade names.  Defendants guaranteed Plaintiff eight percent interest on

24  the $123,000 Plaintiff spent on the stock.  Defendant Van Clief then sent Blum

25  certificates totaling 246,000 shares of stock, but failed to send Blum a certificate for the

26  additional 123,000 shares of stock owed to him pursuant to the warrant.  Van Clief

27  subsequently sent Blum a certificate for 54,000 of the shares of common stock.

28  However, when Blum attempted to have the shares credited to his investment account,

1    Blum's financial advisor informed him that the certificate was invalid.  On June 20, 2010,

2    Blum's financial advisor spoke with Defendant Van Clief and Van Clief acknowledged

3    that he fraudulently printed and signed the stock certificate.

4           After the initial conversation between Blum's advisor and Van Clief, there were

5    several negotiations involving Blum, his financial advisor, and Van Clief about Blum's

6    purchase of Spaha stock.  The parties entered into several agreements whereby Van

7    Clief agreed to pay Blum for Blum's stock in Spaha.  The last of these agreements was

8    a contract between Blum and Van Clief which stated that Van Clief would pay Blum

9    $300,000.  (Dkt. no. 1 at 12.)   However, Van Clief never fulfilled his contractual

10   obligation.

11          Plaintiff filed this action on February 16, 2012.  The Complaint alleges (1) breach

12   of contract; (2) breach of fiduciary duty; (3) breach of the covenant of good faith and fair

13   dealing; (4) tortious breach of the covenant of good faith and fair dealing; (5)

14   constructive fraud; (6) fraudulent and intentional misrepresentation; (7) constructive

15   trust; (8) conversion; and (9) unjust enrichment.

16          Plaintiff filed a Motion for Entry of Clerk's Default on April 18, 2012 (dkt no. 14).

17   After obtaining an Entry of Clerk's Default (dkt. no. 15), he filed this Motion (dkt. no. 18)

18   on May 25, 2012.

19   **III.    DISCUSSION**

20          Obtaining a default judgment is a two-step process governed by Federal Rule of

21   Civil Procedure 55.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, Rule

22   55(a) provides, "When a party against whom a judgment for affirmative relief is sought

23   has failed to plead or otherwise defend, and that failure is shown by affidavit or

24   otherwise, the clerk must enter the party's default."   Second, after the clerk enters

25   default, a party must seek entry of default judgment under Rule 55(b).

26          Upon entry of default, the court takes the factual allegations in the non-defaulting

27   party's complaint as true. Nonetheless, while entry of default by the clerk is a

28   prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is

2

1    not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*,

2    346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted).  Instead, whether a

3    court will grant a default judgment is in the court's discretion. *Id.* (citations omitted).

4        The Ninth Circuit has identified the following factors as relevant to the exercise of

5    the court's discretion in determining whether to grant default judgment: (1) the possibility

6    of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the

7    sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the

8    possibility of a dispute concerning material facts; (6) whether the default was due to the

9    excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

10   Procedure favoring decisions on the merits.  *Eitel*, 782 F.2d at 1471-72. The Court

11   considers these factors below.

12       **A.    Prejudice**

13       The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

14   judgment is not entered.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

15   1177 (C.D. Cal. 2002).  Plaintiff served Defendants with the Summons and Complaint

16   on March 9 and 12, 2012 (dkt. nos. 6, 7), and a Notice of Intent to Take Default on April

17   4 (dkt. nos. 8, 9).   Since that time, Defendants have not answered, made an

18   appearance, or otherwise responded to the Complaint.  Due to Defendants' refusal to

19   appear in this action, and the likelihood that Defendants will continue to refuse to

20   compensate Plaintiff, the possibility of prejudice to Plaintiff in the absence of a default

21   judgment is great.  Thus, this *Eitel* factor weighs in favor of entering default judgment.

22

23       **B.    Merits of Plaintiff's Substantive Claims and Sufficiency of the
             Complaint**

24       The second and third *Eitel* factors favor a default judgment where the complaint

25   sufficiently states a claim for relief under the "liberal pleading standards embodied in

26   Rule 8" of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 8; *Danning v.*

27   *Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).

28   ///

1      Plaintiff's Complaint states plausible claims for relief under Rule 8, and Plaintiff

2   provided the contract in question to support his breach of contract claims.[1]   In a breach

3   of contract action, a plaintiff "must show (1) the existence of a valid contract, (2) a

4   breach by the defendant, and (3) damage as a result of the breach."  *Brown v. Kinross*

5   *Gold U.S.A., Inc.* 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008) (citing *Richardson v.*

6   *Jones & Denton*, 1 Nev. 405 (1865)).  Plaintiff has provided a copy of the contract and

7   sufficient evidence that Defendants are liable for breaching the contract by failing to

8   compensate Plaintiff the $300,000 set forth in the contract.  Because the allegations in

9   the complaint and the evidence Plaintiff has submitted indicate a strong likelihood that

10  Plaintiff will succeed on the merits, the second and third *Eitel* factors favor entering a

11  default judgment.

12      **C.      Sum of Money at Stake**

13      Under the fourth *Eitel* factor, the court considers "the amount of money at stake

14  in relation to the seriousness of Defendants' conduct."  *PepsiCo*, 238 F. Supp. 2d at

15  1176.  Plaintiff has provided evidence that he made an agreement with Defendants for

16  $300,000.  Because Plaintiff demonstrates a basis for his requested monetary relief, the

17  fourth *Eitel* factor favors Blum.

18      **D.      Possible Dispute**

19      The fifth *Eitel* factor considers the possibility of dispute as to any material facts in

20  the case.  *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177.  Here, given the sufficiency of the

21  Complaint, "no genuine dispute of material facts would prejudice granting [Plaintiff's]

22  motion." *See id.*

23      **E.      Excusable Neglect**

24      The sixth *Eitel* factor considers the possibility that the default resulted from

25  excusable neglect.  The evidence shows that Plaintiff properly served Defendants with

26

27      [1] However, as to the unjust enrichment claim, such a claim cannot lie where there
    exists a valid express contract covering the subject matter.  *See also LeasePartners*
    *Corp. v. Robert L. Brooks Trust Dated  Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)
28  (citing AM. JUR. 2D *Restitution* § 6 (1973)).

1   the Summons and Complaint pursuant to Rule 4 of the Federal Rules of Civil

2   Procedure. (Dkt. nos. 6, 7.)  *See* Fed. R. Civl. P. 4.  Therefore, it is unlikely that

3   Defendants' failure to respond and subsequent default resulted from excusable neglect.

4        **F.**    **Decision on the Merits**

5        The seventh *Eitel* factor states that "[c]ases should be decided upon their merits

6   whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, the "mere existence

7   of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'"

8   *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted).  Moreover, Defendants' failure

9   to answer Plaintiff's complaint makes a decision on the merits impractical, if not

10  impossible.  Thus, the Court is not precluded from entering default judgment against

11  Defendants.

12  **IV.**    **CONCLUSION**

13       IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment is

14  GRANTED.  The Clerk of the Court shall enter judgment against Defendants in the

15  amount of $300,000 plus accrued interest from the date of the judgment until paid.

16       IT IS FURTHER ORDERED that Plaintiff shall have thirty (30) days from the

17  entry of judgment to file a motion for attorneys' fees that complies with Local Rule 54-

18  16.

19       IT IS SO ORDERED.

20       DATED THIS 31st day of July 2012.

21

22            UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28